UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ROBERT LYNN BARNETT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:12-CV-372 |
| | ) | |
| ELLEN JANE SIMON BARNETT, | ) | |
| RETHA PATTON, EXECUTIVE | ) | |
| DIRECTOR, EASTERN EIGHT | ) | |
| COMMUNITY DEVELOPMENT | ) | |
| CORPORATION, LAWRENCE F. | ) | |
| COUNTS, ATTORNEY/MOUNTAIN | ) | |
| STATES TITLE COMPANY, | ) | |
| RANDALL BIRCHFIELD, RANDALL | ) | |
| BIRCHFIELD REAL ESTATE AND | ) | |
| AUCTION COMPANY, SETH LADY, | ) | |
| JASON JOHNSTON, COLDWELL | ) | |
| BANKERS REAL ESTATE | ) | |
| CORPORATION, COLDWELL | ) | |
| BANKER SECURITY REAL ESTATE, | ) | |
| QUENTIN O'DELL SUTPHIN III, | ) | |
| EXPRESS TITLE & CLOSING, LLC, | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on numerous motions: (1) Motion to dismiss filed by Quentin O'Dell Sutphin, III and Express Title & Closing, LLC, [Doc. 2]; (2) motion to dismiss filed by defendant Ellen Jane Simon Barnett, [Doc. 4]; (3) motion to dismiss filed by defendant, Retha Patton, Executive Director, Eastern Eight Community Development Corporation, [Doc. 9]; (4) motion to dismiss filed by defendants Jason Johnston and Security Real Estate of Tennessee, Inc., d/b/a Coldwell Banker Security Real Estate[1] , [Doc. 12]; (5) motion to dismiss filed by defendants

---

[1] Plaintiff has apparently improperly identified this defendant in his complaint as Coldwell Bankers Real Estate Corporation and Coldwell Banker Security Real Estate.

Randall Birchfield and Randall Birchfield Real Estate and Auction Company, [Doc. 18]; (6) motion to dismiss filed by defendant Seth Lady, [Doc. 36]; (7) motion to dismiss filed by defendant Lawrence F. Counts, Attorney/Mountain States Title Company, [Doc. 40]; (8) application for Clerk's default as to Seth Lady by plaintiff, [Doc. 34]; and (9) motion for hearing on application for default judgment filed by plaintiff, [Doc. 51]. Responses have been filed to all pending motion and they are now ripe for disposition. The Court has carefully considered the pending motions and the related pleadings in light of the applicable law and will address each of the arguments made by the various defendants as to why plaintiff's claims against them should be dismissed. For the reasons which follow, the motions to dismiss will be GRANTED, plaintiff's application for Clerk's default and motion for hearing on default judgment will be DENIED, and plaintiff's complaint DISMISSED WITH PREJUDICE.

**I.      Relevant Facts and Allegations of the Complaint**

Robert Lynn Barnett and Ellen Jane Simon Barnett were previously married but were divorced by a judgment of the Washington County , Tennessee Circuit Court in August, 2008. This action "arises" out of that divorce between the Barnetts, [see Doc. 1 at 1]. At issue in the divorce case was the validity of the Robert Lynn Barnett Irrevocable Trust (the "Trust") established on August 1, 1991, during the marriage. The Circuit Court declared the Trust void *ab initio* and the Trust property, including four parcels of real estate referenced in plaintiff's complaint, as the property of one or both of the parties to the divorce case.

Plaintiff appealed the circuit court judgment to the Tennessee Court of Appeals which affirmed the trial court's judgment as to the Trust, finding plaintiff's appeal "devoid of merit" and thus frivolous. *See Barnett v. Barnett*, No. E2088 -02679- COA-R3-CV, 2010 WL 680983 (Tenn.

Ct. App. Feb. 6, 2010). Plaintiff's application for permission to appeal was denied by the Tennessee Supreme Court on August 25, 2010.

Plaintiff filed the instant *pro se* complaint on August 28, 2012, against his former wife and several other persons and/or entities involved in the subsequent sale and/or purchase of real estate which had been titled to the Trust. He seeks a declaration that Ellen Jane Simon Barnett violated her duties as the former trustee of the Trust and that all defendants "ignored the Trust assets as being protected assets" which were "sold or transferred without due process" through fraudulent conveyances. He seeks damages of $2,500,000 and attorney's fees and costs.

**II.     Standard of Review**

All defendants have moved to dismiss pursuant to various provisions of Federal Rule of Civil Procedure 12. Common to the motions are allegations of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The Court will address only those issues raised under Rules 12(b)(1) and 12(b)(6) and all other issues are pretermitted.

**A.     Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

In a "facial attack," the basis of the challenge is not that the court does not actually have jurisdiction over the case, but rather that the plaintiff has failed to faithfully recite all the jurisdictional predicates necessary for the court to exercise subject matter jurisdiction over the matter. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). If based

3

on a facial attack, "a district court takes the allegations in the complaint as true, which is a similar safeguard employed under [Fed. R. Civ. P.] 12(b)(6) motions to dismiss." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust*, 491 F.3d 320, 330 (6th Cir. 2007) (citations omitted). If the plaintiff's allegations establish federal claims, jurisdiction exists. *Id.*

In contrast, a party making a "factual attack" on subject matter jurisdiction challenges the actual existence of the court's jurisdiction-- a defect that may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction. *RMI Titanium*, 78 F.3d at 1134. In this situation, the Court must weigh the evidence and the plaintiff has the burden of proving that the Court has jurisdiction over the subject matter. *Golden*, 410 F.3d at 881.

**B.    Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[2] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [his] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d

---

[2] *Conley v. Gibson* was abrogated by the Supreme Court's *Twombly* discussion. The statement for which *Conley* is cited, however, remains good law.

4

899, 902 (6th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court explained that analysis under Rule 12(b)(6) requires a two-pronged approach. First, the reviewing court should determine what allegations within the complaint can be classified as "legal conclusions" and disregard them for purposes of deciding the motion. *Id.* at 678. Second, the court should evaluate the remaining portions of the complaint, *i.e.* the well-pleaded facts, and ascertain whether it gives rise to a "plausible claim for relief." *Id*. at 679. At the second stage, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### III. Analysis and Discussion

#### A. Subject Matter Jurisdiction

"As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). A federal court, *sua sponte* or upon motion of a party, must satisfy itself of its jurisdiction over the subject matter before it considers the merits of the case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The plaintiff bears the burden of establishing a court's subject matter jurisdiction over a claim. *See Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993).

##### 1. Federal Question

The plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331

5

which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. All defendants argue that federal question jurisdiction is, however, lacking and appear, although they do not explicitly say so, to make both a facial attack and a factual attack on plaintiff's complaint.[3]

In the complaint, plaintiff alleges the jurisdictional basis of his complaint as "Constitutional Contract Law (U.S. Constitution, Article I, § 10), Civil Rights Laws (42 U.S.C. Section 1983), Uniform Trust Code, Uniform Fraudulent Transfer Act, Tennessee Uniform Trust Code and the Tennessee Investment Services Act of 2007 amending TCA 35-15-505 and 66-1-202; Tennessee Code Annotated Section 35-50-110, Internal Revenue Service, Title 26, sub-chapter J (Estates, Trusts, Beneficiaries, and Decedents-Sections 641 through 692) of the Internal Revenue Code; Treasury Regulations, Sub-chapter F, Sec. 301.7701-4 Trust; Treasury Regulations, Sub-chapter F, Sec. 301.7701-7 Trusts-domestic and foreign and Treasury Regulations, Sub-chapter F, Sec. 301.7701-6 Definitions; person, fiduciary and have caused irreputable damage and injury to the Plaintiff." [Doc. 1 at 13-14]. Defendants argue that the allegations in the complaint are not "legitimate," are groundless and without merit, seek to relitigate matters already decided by the Tennessee state courts, and do not state any legally cognizable causes of action against defendants.

All of what defendants argue may be true, as discussed more fully below. The Court finds, however, that the facts alleged in the complaint, the jurisdictional allegations of the complaint, and plaintiff's responses to the motions to dismiss, meet the relatively low threshold to establish federal question jurisdiction under 28 U.S.C. § 1331, both facially and factually. Furthermore,

---

[3] Several of the defendants also argue that diversity of citizenship, pursuant to 28 U.S.C. § 1332, does not exist in the case. This is apparent from the face of the complaint; however, plaintiff does not argue otherwise and concedes in his response that he has not attempted to invoke the Court's jurisdiction pursuant to § 1332.

plaintiff has specifically alleged causes of action under 42 U.S.C. § 1983 and Article I, § 10 of the United States Constitution, clearly claims for relief under federal law. The allegation of jurisdiction under a federal statute or the federal Constitution requires the district court to entertain the suit. *See Cherokee Express, Inc. v. Cherokee Express, Inc.*, 924 F.2d 603, 609 (6th Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 681-82 (1946) ("[W]here the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court . . . must entertain the suit.")).

Given the less stringent standard by which this Court views pleadings by pro se plaintiffs, *see Estelle v. Gamble*, 429 U.S. 97 (1976), the Court finds that plaintiff's complaint survives both a facial and factual attack under Rule 12(b)(1). Plaintiff has asserted factual allegations and asserted causes of action which "arise [ ] under the Constitution, [and] laws . . . of the United States." 28 U.S.C. § 1331. Accordingly, the Court has federal question jurisdiction.

### 2. *Rooker-Feldman* Doctrine

Defendants also argue that the Court lacks jurisdiction over plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine emerged out of two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). In effect, the plaintiffs in *Rooker* and *Feldman* sought to "appeal" their state cases to a federal district court.

After various circuits took different approaches to the *Rooker-Feldman* doctrine, the

7

Supreme Court clarified the doctrine and noted its limited scope, confirming its application "to cases of the kind from which the doctrine acquired its name: Cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of these judgments." *Exxon Mobil*, 544 U.S. at 284. The Sixth Circuit, following *Exxon Mobil*, has "applied the doctrine only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). In other words, the *Rooker-Feldman* doctrine applies "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006).

The Court determines "whether *Rooker-Feldman* bars a claim by looking to the 'source of the injury the plaintiff alleges in the federal complaint.'" *Evans v. Cordray*, 424 Fed. App'x 537, 538 (6th Cir. 2011) (quoting *McCormick*, 451 F.3d at 393)). *Rooker-Feldman* does not address potential conflicts between federal and state court orders. That is the purview of the doctrines of comity, abstention, and preclusion. Instead, *Rooker-Feldman* focuses on whether the state court decision caused the injury: "If the source of the injury is the state court decision then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim." *McCormick*, 451 F.3d at 393.

The Sixth Circuit has also given guidance to the district courts as to how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, which is not, and has adopted "an appropriate rule of thumb" from the Fourth Circuit's decision in *Davani v. Virginia Dept. of Transportation*, 434

F.3d 712 (4th Cir. 2006):

> The plaintiffs in *Rooker and Feldman* sought redress for an injury allegedly caused by the *state-court decision itself*-in *Rooker*, the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman*, the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot* [a pre-*Exxon Mobil* case], by contrast, we extended the *Rooker-Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's actions*.

*McCormick*, 451 F.3d at 393 (quoting *Davani*, 434 F.3d at 717) (emphasis in original). "[T]here are certain exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions is in fact a challenge to the judgment itself." *McCormick*, 451 F.3d at 394.

Applying the Sixth Circuit's guidance is somewhat difficult in this case. On the one hand, all of plaintiff's claims implicate and call into question the legitimacy of the state court's decision. On the other hand, however, plaintiff does not explicitly ask the Court to set aside the state court's decision. In other words, he does not ask the Court for a declaration that the state Circuit Court's decision is unconstitutional or a violation of federal law. What plaintiff asks for is a declaration that "the former Trustee," *i.e.*, Ellen Jane Simon Barnett, disregarded the Trust and violated "her fiduciary duties as a former trustee." [Doc. 1 at 22]. Plaintiff further seeks a declaration that "all Defendants recllessly [sic] ignored the trust assets as being protected assets and were not to [be] sold or transferred without due process." [*Id.*]. He also seeks damages from the defendants for their participation in "fraudulent conveyances" related to the property in the Trust.

In each case, plaintiff, in order to prevail, would have to prove the existence of a valid irrevocable trust, something he is precluded from doing by the state court's decision that the Robert

9

L. Barnett Irrevocable Trust is void *ab initio* as discussed below. Since he does not claim that the state court's orders, in and of themselves, violate the federal Constitution or federal law, but rather that defendants acted illegally, the Court concludes that the limited reach of the *Rooker-Feldman* doctrine does not preclude subject matter jurisdiction in this case. As in *McCormick*, plaintiff asserts independent claims of breach of fiduciary duty and fraud. "Certainly, these independent claims may deny a legal conclusion of the state court, *i.e.* [the Robert Lynn Barnett Irrevocable Trust is void *ab initio*]; however, this fact does not lead to a divestment of subject matter jurisdiction in the federal courts. Instead the Supreme Court has instructed that preclusion law is the appropriate solution for these independent claims." *McCormick*, 451 F.3d at 392.[4]

### 3. Domestic Relations Exception

Several defendants also raise the "domestic relations exception" and urge the Court to decline jurisdiction on that basis. Under the domestic relations exception, federal courts have traditionally declined to exercise jurisdiction over cases involving divorce, alimony, adoption, and child custody matters subject to state law. *See McLaughlin v. Cotner*, 193 F.3d 410, 412 (6th Cir. 1999); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 693-703 (1992). In determining whether jurisdiction exists, courts are to carefully examine the complaint and determine whether the plaintiff's claims are actually concerned with a domestic relations matter, though they may be phrased in terms of a tort action. *See Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988); *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981).

---

[4] The Court notes that the defendants, Jason Johnston and Security Real Estate of Tennessee, Inc. d/b/a Coldwell Banker Security Real Estate, have attached to their memorandum state court orders which reflect that as to one parcel of the subject real estate, the defendants were appointed realtor for the sale of the property in order to carry out the terms of the divorce judgment, [*see* Docs. 13-2,. 3], thus possibly bringing the case within the exception noted above at page 9 that when a third party's actions are the product of a state court judgment, then a challenge to those actions are a challenge to the judgment itself. The Court will not decide the issue, finding it preferable to decide the matter on the other grounds discussed in this memorandum.

Even where plaintiff's complaint may meet the technical requirements of raising a federal question, this is of no moment to the application of the domestic relations exception. The Sixth Circuit has long recognized that "[e]ven when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Firestone*, 654 F.2d at 1215 (citing *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973)); *see also Popovici v. Agler*, 280 U.S. 379, 383-84 (1930) (stating federal government has no power to regulate any aspect of domestic relations law); *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) (voiding writ of habeas corpus issued by federal district court which restored child to custody of plaintiff-father after concluding "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States").

In *McLaughlin v. Cotner*, a plaintiff argued her suit against her ex-husband did not fall within the domestic relations exception to federal jurisdiction because her complaint sought damages for breach of contract and tortious interference with a contract relating to residential property under Ohio tort and contract law. *See* 193 F.3d at 413. The Sixth Circuit held otherwise, finding that the contract in dispute was part of a separation agreement which had been incorporated into a divorce decree. *Id*. As such the Sixth Circuit concluded it lacked jurisdiction because "this case is not a tort or contract suit that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status." *Id*. at 413-14.

Plaintiff's claim here is no different from plaintiff's claim in *McLaughlin* because an adjudication of plaintiff's claim necessarily requires the Court to examine the substance of the divorce case, *i.e.*, whether the trust agreement and subsequent division of the marital property was proper. Although plaintiff tries, not too artfully, to disguise the nature of the action by seeking

11

damages, he nonetheless seeks a declaration that his former wife violated her duties as a former trustee of a now non-existent trust and that the state court's division of marital property has ignored the trust's existence and has resulted in the fraudulent sale or transfer of assets belonging to that same non-existent trust. Such a declaration of this Court would necessarily require the Court to declare rights arising from the marital status and the attendant divorce proceedings. These matters, including the division of the marital assets, "are uniquely state matters which involve distinct issues of state law." *Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir. 1998).

The Court certainly acknowledges that the domestic relations exception to a federal court's jurisdiction, like the *Rooker-Feldman* doctrine, is one that applies to a narrow set of circumstances. Generally, cases involving "a constitutional claim in which it is incidental that the underlying dispute involves a divorce" or another type of domestic relations matter, however, are not considered to be core domestic relations cases within the narrow confines of the exception. *Id.* Nevertheless, the Court, after examining the complaint, has determined that the plaintiff's claims concern a domestic relations matter and should not be entertained in federal court. In addition, federal courts have also long abstained from exercising jurisdiction over the administration of trusts and estates in favor of state courts. *Firestone*, 654 F.2d at 1216. For these further reasons, the Court determines that it should abstain from exercising jurisdiction in what is essentially a domestic relations matter.

### B. Failure to State a Claim

For several reasons, the Court concludes that, even assuming that it has jurisdiction, the Rule 12(b)(6) motions to dismiss are well taken and the complaint should be dismissed for failure to state a claim upon which relief can be granted.

### 1. Claim Preclusion

Under 28 U.S.C. § 1738, the Full Faith And Credit Act, federal courts are required to give the judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision. *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2005) (citing *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 85 (1994)). "The preclusive effect of a state court judgment is determined by that state's law." *Id*. (quoting *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 394 (6th Cir. 2002).

The Tennessee Supreme Court recently summarized the application of the doctrine of *res judicata* in Tennessee:

> The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989)). It is a "rule of rest," *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976), and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the costs and vexation of multiple lawsuits. *In re Estate of Boote*, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tennessee Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002).
>
> The party asserting a defense predicated on res judicata or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties of their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *see also Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990).

*Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012).

Just as the doctrine of *res judicata* bars a second suit between the same parties or

their privies, the doctrine of collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. The party invoking the doctrine of collateral estoppel must demonstrate that (1) the issue sought to be precluded is identical to the issue cited in the earlier suit; (2) the issue sought to be precluded was actually litigated and decided on the merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the judgment against whom collateral estoppel is asserted is a party or is in privity with a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the new issue now sought to be precluded. *Beaty v. McGraw*, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998).

As noted above, the general rule is that estoppel by former adjudication applies only in proceedings involving identical parties and issues. It is also the general rule, however, that a party who participated in former litigation may be bound by collateral estoppel as to issues decided adversely to him in the former litigation. *Fourakre v. Perry*, 667 S.W.2d 483 (Tenn. Ct. App. 1984), *perm. app. denied* March 19, 1984. Therefore, as the doctrine is applied in Tennessee, "a plaintiff who deliberately selects his forum is bound by an adverse judgment therein in a second suit involving the same issues, even though defendant in the second suit was not a party, nor in privity with a party, in the first suit." *Id*. at 487 (quoting 50 C.J.S., Judgments, § 765). There is no "mutuality of estoppel" in such a situation because a judgment adverse to the defendant in one suit would not preclude a different defendant from seeking a different result in a different suit. But the absence of mutuality does not bar defensive use of the collateral estoppel doctrine, where the plaintiff submitted the controlling issue to a tribunal having full authority to decide it and that

14

tribunal decided the issue adversely to the plaintiff. "Plaintiff has had his day in court on that issue, and may not have another." *Id*. at 488. *Cf. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), where the Supreme Court of the United States reached a similar result under federal law.

Where federal law applies, four criteria must be met before the doctrine of collateral estoppel may be used to preclude further judicial review of an issue: "(1) The precise issue raised in the present case must have been raised and actually litigated in the prior proceedings; (2) determination of the issue must have been necessary to the outcome of the proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *United States v. Sandoz Pharmaceuticals Corp*., 894 F.2d 825, 826-27 (6th Cir.), *cert. denied*, 489 U.S. 810 (1990).

The doctrines of *res judicata* and collateral estoppel operate to bar plaintiff's claims in the instant case. Crucial to every claim raised by plaintiff, whether under federal or state law, is the existence of a valid trust, the Robert Lynn Barnett Irrevocable Trust. As between plaintiff and defendant Ellen Jane Simon Barnett, that issue has been squarely raised and addressed by the state courts in the prior divorce litigation between them. The final judgment of the state court conclusively established that the purported Trust was void *ab initio*, *i.e*, it never had any lawful existence or effect. Plaintiff may not, in this subsequent suit, relitigate the issue. Likewise, the issue having been actually decided by the state courts adversely to plaintiff in proceedings where plaintiff had a full and fair opportunity to litigate the issue, defendants may use the doctrine of defensive collateral estoppel to bar relitigation of the issue in the instant case.

### 2. 42 U.S.C. Section 1983

Plaintiff's claim for a deprivation of his civil rights under 42 U.S.C. § 1983 also fails because of plaintiff's failure to plead an essential element of the cause of action. To establish a cause of action under § 1983, two elements must be pled and proven: (1) Deprivation of a right secured by the Constitution or laws of the United States, and (2) caused by a person acting under color of state law. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).

None of the defendants in this case hold any public position nor is any defendant a governmental entity, and plaintiff does not argue otherwise. Defendants' conduct, individually or collectively, thus could not constitute state action and could not have been actions under color of law. A plaintiff may not prevail under § 1983 against a private party. *Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003). Plaintiff has failed to plead, and cannot prove, the required state action.

### 3. Article I, Section 10

Article I, Section 10 of the federal Constitution provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I § 10. The Supreme Court has adopted a three-part inquiry for claims of contract impairment. Courts must determine (1) whether a plaintiff has shown "a substantial impairment" of a contractual relationship; (2) assuming substantial impairment is shown, whether the state has a "significant and legitimate public purpose behind the regulation" alleged to impair the contract, such as the "remedying of a broad and general social or economic problem," and (3) assuming a legitimate public purpose has been identified, whether adjustment of rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the "public purpose" justifying the legislation's adoption. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983);

*Linton by Arnold v. Commissioner of Health and Environment, State of Tenn.*, 65 F.3d 508, 517 (6th Cir. 1995).

The constitutional prohibition on impairment of contracts has long been recognized as one against the impairing of contracts by ***state legislation*** "and does not reach errors committed by state courts when passing upon the validity and effect of a contract." *Long Sault Development Co. v. Call*, 242 U.S. 272, 280 (1916); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 491 (6th Cir. 2002). Plaintiff neither pleads nor points to any state legislation or regulation which allegedly impairs a contractual relationship. At best, he simply argues that the state courts were in error in interpreting the trust agreement, *i.e.*, the validity and effect of the agreement. Such an allegation fails to state a claim under Article I, § 10.

For these multiple reasons, plaintiff's complaint fails to state a claim against any defendant and must be dismissed.

**IV.    Conclusion**

For the reasons set forth herein, defendants' motions to dismiss, [Docs. 2, 4, 9,12, 18, 36, 40]; will be GRANTED, plaintiff's application for Clerk's default, [Doc. 34], is DENIED, and plaintiff's motion for a hearing on the request for default judgment, [Doc. 51], is DENIED. As a result, plaintiff's complaint will be DISMISSED WITH PREJUDICE and judgment entered in favor of all defendants.

So ordered.

ENTER:

                                                s/J. RONNIE GREER
                                        UNITED STATES DISTRICT JUDGE